# EXHIBIT "C"

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA
FAMILY DIVISION

| | | |
|---|---|---|
| NANCY JENNINGS, | ) | Civil Action No. |
| | ) | 2020CV337822 |
| Petitioner, | ) | |
| vs. | ) | |
| | ) | |
| JEFFREY GALLUPS, | ) | |
| | ) | |
| Respondent. | ) | |

## RECEIVER'S FIRST INTERIM REPORT

S. Gregory Hays, solely in his capacity as Receiver herein ("**Receiver**"), appointed pursuant to the Court's *Order Compelling Compliance, Appointing Receiver, and Granting Injunctive Relief* entered in this civil action August 16, 2023 (the "**Receivership Order**"),[1] files this *Receiver's First Interim Report*. The Receiver serves as the receiver for Jeffry Gallups individually and the eleven entities generally referred to as the "Affiliated Entities" as identified in Paragraph 1, below.

## OVERVIEW

The Receiver had been on a dual track to recover funds from Respondent while at the same time operating and stabilizing the Affiliated Entities and marketing for future sale. The Receiver has spent a great deal of time identifying possible recoveries from Respondent to assist in supporting the Affiliated Entities. The Affiliated Entities had been poorly managed and have over $4 million in trade debt that was months in arrears as of the Receiver's appointment. The Receiver's plan is to sell the business to pay the trade creditors and the Respondent's individual obligations including IRS, DOJ and court-ordered alimony.

---

[1] Unless otherwise indicated, capitalized terms in this Interim Report will have the meanings attributed them in the Receivership Order.

Cash flow has been extremely tight and the Receiver barely has funds to operate the business. On an almost-daily basis, the Receiver discovers and/or must address numerous existential crises. Multiple landlords, lenders, and the DOJ and Georgia A.G. have taken or have threatened to take legal action which could significantly impair or destroy business operations. The Receiver has been able to make payroll on a timely basis but has had to triage the business's other payment obligations due to cashflow challenges. These conditions have been exacerbated by the fact that the Receiver has had to fight for payments owed to the business by Medicare and private insurers. The Receiver is trying to obtain a bridge loan to pay portions of the trade debt and continue operating until a sale can be completed.

**I.      BACKGROUND**

1.      On August 16, 2023 (the "**Appointment Date**"), the Court entered the Receivership Order, appointing the Receiver as receiver of (i) Respondent; (ii) the Companies (consisting of Milton Hall Surgical Associates, LLC ("**MHSA**"), Alpharetta Surgery Center, LLC, and ENTI Surgery Center LLC), HCENTI, LLC, ENTI Anesthesia, LLC, Milton Hall Management, LLC, MHSA Management, LLC, Milton Hall Trust, Nutmeg Management LLC, Marble Management, LLC, DRG Media, LLC, and all other operating entities, holding companies, debt arrangements, voting trusts, or other trusts or entities of any kind, known or unknown, directly or indirectly controlled by Respondent or Melissa Moritz (collectively, the "**Affiliated Entities**"); (iii) all of Respondent's Assets and all assets of the Affiliated Entities, in each case consisting of assets of all class and manner and wherever situated (the "**Receivership Assets**"). Respondent and the Affiliated Entities are referred to collectively in the Receivership Order and in this Interim Report as the "**Gallups Group**".

2. Receiver has engaged the law firm of Taylor English Duma LLP ("**Taylor English**") as legal counsel to the Receiver.

3. Since the Appointment Date, the Receiver has taken considerable steps to marshal the Receivership Assets and to take control of, stabilize and operate the business of the Affiliated Entities.

## II. BUSINESS OPERATIONS

4. Two (2) weeks prior to the Appointment Date, Scott Wilkins was engaged as CFO of the Affiliated Entities. The Receiver continues to retain Mr. Wilkins, whose services have been crucial to the Affiliated Entities' operation. Mr. Wilkins became the COO on September 1, 2023, and together with the Receiver is an integral part of the management team. When this report refers to "Receiver", it also includes the efforts of Mr. Wilkins.

5. As of the Appointment Date, Respondent's ex-wife, Melissa Moritz, was employed by the Affiliated Entities as the CEO. Ms. Moritz demanded excessive severance pay to continue in her role managing the Affiliated Entities. The Receiver determined that the dismissal of Ms. Moritz was in the best interest of the Affiliated Entities and the Receivership Estate and dismissed Ms. Moritz Effective August 31, 2023.

6. <u>Payor Relations</u>. Like almost all other providers of health care services, the revenue of the Affiliated Entities derives almost exclusively from their participation as contracted providers in their patient's health insurance plans. Historically, the Affiliated Entities receive approximately 24% of their total income from Blue Cross Blue Shield of Georgia ("**BCBSGA**") and 7% from Medicare. On the Appointment Date, Medicare had already terminated the Affiliated Entities' Medicare participation and BCBSGA had terminated the participation of MHSA in BCBSGA's network as of July 19, 2023.

Medicare had terminated the Affiliated Entities' eligibility in April of 2023 due to Respondent's convicted felon status while being the owner of the Affiliated Entities. Owners of Medicare enrolled entities must inform Medicare upon felony conviction and must also dispose of any ownership of or management control over any Medicare entity. Prior to Receivership, Respondent had negotiated the recission of Medicare's revocation if Respondent transferred 100% of his ownership interest in the Affiliated Entities. Respondent floated a series of transfer proposals, all of which were structured to provide him indirect control of the entities. Finally, acting without the knowledge or consent of his legal counsel, on August 7, 2023, Respondent caused the Affiliated Entities to convey all their non-clinical assets to a newly formed physician practice management company, Nutmeg Management, LLC ("**Nutmeg**"). Nutmeg's sole owner at the time was Respondent's recently divorced second wife, Melissa Moritz, who also served as CEO of the Affiliated Entities at the time. Simultaneously, Respondent transferred all his equity interests in the Company to another Georgia physician.

The Special Master described this as a "covert" transaction in the August 8, 2023, *Special Master's Report and Recommendation Respecting Status of Incremental Transfer of the Companies*. While Respondent's covert sale and transfer of the Affiliated Entities' assets and equity violated Respondent's obligations under the Divorce Decree issued by this Court with reference to his first wife, the equity transfer did operate to rescind Medicare's revocation of the Affiliated Entities' Medicare billing privileges. Medicare has slowly begun paying the Affiliated Entities' Medicare claims. Since Medicare began processing claims again, a total of $484,110.58 has been paid and $189,000 is still anticipated to be paid for a total of $673,110.58. The Receiver expects that he will receive the bulk of the $189,000 in Medicare receivables due to the Affiliated Entities within the next 30-45 days. This is subject to multiple appeals of Medicare's decision to

retract payments from claims originating as far back as October 2021, and those retracted payments are being offset against current claim payments. The Receiver had to appeal those claims to try to recoup those funds.

Collection of BCBSGA claims is more difficult. The Affiliated Entities' collection rate for BCBSGA claims prior to the Appointment Date was approximately 32%. The Affiliated Entities have accrued $2.3M in gross BCBSGA claims with estimated net recovery of approximately $1.2 million. Those claims have not been processed by BCBSGA due to BCBSGA's cancelling the contract in connection with Respondent's felony charge and conviction and Medicare's revoking Respondent's Medicare participation status. The Receiver discovered that on June 17, 2023, two months before his appointment, BCBSGA terminated MHSA's Provider Agreement with BCBSGA. Because certain patients continued to receive medical services, BCBSGA regarded the Affiliated Entities to be "out of network" providers and paid the covered amounts directly to the patients. While the Receiver has pursued recovery of these funds and to have the contract reactivated to the termination date, recoupment of these payments by MHSA may be difficult and take a long time.

As of mid-October 2023, BCBSGA is taking the position that the Affiliated Entities' change of ownership in August caused the termination. The Receiver is disputing this rationale and is reviewing its options in this matter. The Receiver has signed a new BCBSGA contract with an effective date of November 19, 2023.

7. <u>Ambulatory Surgery Centers</u>. The Gallups business enterprise includes two ambulatory surgery centers. The Alpharetta Surgery Center, LLC ("**Alpharetta ASC**") operates under a Special Purpose Certificate of Need. By letter dated September 19, 2023, the Accreditation Association for Ambulatory Health Care, Inc. ("**AAAHC**") informed the Receiver's designee that

an investigation of Alpharetta ASC revealed multiple areas of non-compliance constituting Immediate Jeopardy to health and safety. The circumstances leading to the violations were in existence long before the Appointment Date. By letter dated October 13, 2023, the AAAHC informed Alpharetta ASC that AAAHC's accreditation of Alpharetta ASC would be revoked following the end of the applicable appeal period. The Receiver assembled a task force to correct all items of non-compliance in order to maintain accreditation and responded by the deadline. The Receiver continues to monitor the situation and has provided documents to AAAHC.

8. <u>Physician Bonuses</u>. The Receiver has engaged in ongoing negotiations with Physicians employed with the Affiliated Entities regarding their contractual bonuses. To date, the Receiver has paid approximately $350,000 to Physicians for contractual bonuses, with substantial payments having been made on October 15, 2023, following Physicians' agreement to delay the scheduled September 2023 payment of these obligations. The next period of contractual bonuses is in January.

9. <u>Actions Taken to Promote the Sale of the Affiliated Entities</u>. The Receiver's goal in operating the business of the Affiliated Entities is to stabilize and enhance its revenues toward sale of the enterprise at a practical price. The Receiver is entertaining interest from several potential purchasers, all of whom are experienced owners or operators of ENT practices and surgery centers. The Receiver will update the Court on the process of sale negotiations as stabilization of the business continues.

10. <u>Global One Financial Loans</u>. In 2020 and 2021, Respondent, on behalf of ENTI Surgery Center, LLC, executed promissory notes for $11,929,000 and $10,160,618, respectively, in favor of Global One Financial ("GF"). These obligations were secured by security interests in five (5) life insurance policies owned by Respondent. As of October 6, 2023, the total outstanding

balance of the loans was $1,265,408.60. These loans were in default prior to the Appointment Date. Since then, the Receiver has negotiated a resolution of these obligations. Specifically, GF and the Receiver, on behalf of ENTI Surgery Center, LLC, have entered into loan termination agreements whereby the insurance policy collateral is surrendered to GF, GF is waiving certain Commitment Fees, and GF will remit approximately $200,000 to the Receivership Estate. As of the date of this report, the Receiver and GF are waiting for information from Mass Mutual on the liquidation of the five life insurance policies.

11. The Receiver has reviewed the Affiliated Entities' disability insurance policies and is canceling coverage for Dr. Gallups and terminated employees.

12. The Receiver continues to review the 45 life and disability insurance policies and make adjustments as appropriate. The Receiver has engaged a broker to assist in the sale of some of the life insurance policies on retired doctors owned by the Affiliated Entities. To date, the Receiver has not identified a policy that would generate substantial funds for the receiver estate.

13. In reviewing the Affiliated Entities insurance policies, the Receiver discovered that the Affiliated Entities were insuring a building that had been sold in 2020. The Receiver has negotiated with the insurance carrier to get refunds and credits of approximately $42K. The refunds should be issued in the next few weeks.

### III.  LEGAL DISPUTES AND PROCEEDINGS

**A. Receiver's Investigation and Enforcement of Respondent's Disclosure and Other Obligations Under the Receivership Order**

14. The Receivership Order requires Respondent to disclose the business and financial information of the Gallups Group to the Receiver. Pursuant to this authority, the Receiver made numerous demands upon Respondent (through Respondent's counsel of record) for production of documents and relevant materials.

15. On August 31, 2023, the Receiver conducted a video deposition of Respondent for the purpose disclosing such business and financial information.

16. At, before and after the deposition, the Respondent did not voluntarily and cooperate fully with the Receiver in providing such information. In fact, Respondent refused to disclose certain required information. In addition, Respondent misappropriated money subject to the Receivership Order and engaged in other action to frustrate the Receiver's performance of his duties under the Receivership Order.

17. On September 8, 2023, the Receiver filed with the Court his *Receiver's Emergency Motion for Order Holding Jeffrey Gallups in Contempt and Granting Other Relief and Brief in Support Thereof* (the "**Contempt Motion**").

18. The Court conducted hearings on the Contempt Motion on September 14, 2023, and October 2, 2023.

19. On October 12, 2023, and with Respondent's consent as confirmed on the record on October 2, 2023, the Court entered its *Order on Respondent's Compliance to Purge Contempt* (the "**Contempt Purge Order**") requiring, *inter alia*, the following as conditions for Respondent's purging his contempt of the Receivership Order:

a. Respondent's surrender of his (formerly) John Hancock (now) Fidelity IRA to the Receiver. Respondent has complied with this provision;

b. Respondent shall surrender his ownership interest in the residence at 205 Hendricks Isle, Fort Lauderdale, Florida to the Receiver. The Receiver has been in contact with Respondent and a Broker in Ft. Lauderdale and plans to move forward with the sale of house in the near future.

c. Respondent shall surrender personal property, including gun collection, pen collection, guitar collection, art collection, and furniture to the Receiver for sale. Respondent has not yet complied with this provision; but the Receiver is in contact with an auctioneer in Ft. Lauderdale to sell this property.

d. No later than October 31, 2023, Respondent shall surrender personal property held in storage units in New Jersey to the Receiver for sale. Respondent has not yet complied with this provision but the Receiver is making plans to sell the property.

e. To the extent Respondent is entitled to receive proceeds from the Receiver's sale of the Affiliated Entities, Responded shall re-pay to the Nancy Gallups Irrevocable Trust the sum of $338,000.00 from such proceeds.

20. The Contempt Purge Order provides further that Respondent's duties under the Court Orders of August 16, 2023, and September 21, 2023, shall be ongoing and he shall continue to cooperate with the Receiver and Special Master and provide any accounting or other information requested. Respondent is required to have provided the accounting on or before October 23, 2023. Respondent has not yet complied with this provision.

21. Additionally, Respondent has not complied with numerous other reporting and payment obligations under the Court's prior Orders.

22. The Receiver continues to monitor Respondent's compliance with the Contempt Purge Order.

23. The Receiver will continue to report to the Court the status of Respondent's compliance. The Receiver reserves the right to seek the Court's intervention if necessary to compel Respondent's further compliance.

24. The Contempt Purge Order authorizes the partial payment from the proceeds of Respondent's IRA fees of the Receiver, the Special Master, and their professionals, partial payment of alimony to Petitioner Nancy Gallups ("Petitioner"), and future payment of Petitioner's monthly alimony payment, subject to the Receiver's discretion.

**B. Resolution of Respondent's Default under *Qui Tam* Settlement Agreement**

25. On June 30, 2017, Relator Myron Jones, M.D. ("Relator") filed a *qui tam* action under seal in the United States District Court for the Northern District of Georgia, *United States ex rel. Myron Jones, MD., et al. v. Milton Hall Surgical Associates, LLC d/b/a The ENT Institute and a/k/a the Ear, Nose & Throat Institute, Jeffrey M Gallups, MD., et al.*, Civil Action. No. 1:17-cv-2472, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), and the Georgia False Medicaid Claims Act, O.C.G.A. § 49-4-168, et seq. (the "***Qui Tam* Action**"). Relator brought claims against Respondent and MHSA for violation of the False Claims Act, 31 U.S.C. § 3729, et. seq. (the "**FCA**"), the Georgia False Medicaid Claims Act, O.C.G.A. § 49-4-168, et seq. (the "**GFMCA**"), and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).

26. The United States Department of Justice, and on behalf of the Office of Inspector General ("**OIG-HHS**") of the Department of Health and Human Services ("**HHS**") and the Defense Health Agency ("**DHA**"), acting on behalf of the TRICARE Program, and the State of Georgia (collectively, the "**Government**"), intervened in that action, asserting claims against Respondent

and MHSA, including, *inter alia*, claims arising out of the receipt of illegal remuneration and illegal kick-back arrangements in connection with the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("**Medicare**"), the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("**Medicaid**"), and the TRICARE Program, 10 U.S.C. §§ 1071-11 l0b ("**TRICARE**").

27. The parties to the *Qui Tam* Action entered into a Settlement Agreement as of November 17, 2021, whereby Respondent and MHSA agreed to pay $3,068,434.00 in settlement. The Settlement Agreement provides that, if the settlement payment was not fully made within the time permitted under the agreement, the Government would have judgment against Respondent and MHSA in the amount of $5,388,863.00 (the "**Settlement Default Amount**").

28. After the Receiver's appointment, the Receiver discovered that Respondent had failed to make the required monthly installment payments to the Government under the Settlement Agreement and was approximately 4 months in arrears. As a result, Respondent and MHSA were required to pay $596,656.62 on or before September 5, 2023, or else the Settlement Agreement default provisions would become effective, and Respondent and MHSA would be liable for the entire Settlement Default Amount.

29. The Receiver determined that the business of the Receivership Estate likely would not survive the imposition of the Settlement Default Amount.

30. Following extensive negotiations with the Government, the Receiver successfully negotiated a resolution of Respondent and MHSA's default under the Settlement Agreement, whereby the Receiver would pay the Government the first $325,000.00 received from Medicare once Medicare reimbursements resumed, and $100,000.00 per month from revenues until the obligation under the Settlement Agreement is satisfied. When Medicare payments were less than

half of what had been anticipated, the Receiver did not have the funds to maintain the payment plan to DOJ, but has paid the DOJ $220,000

31.     The current balance due DOJ is $376,656.52 and must be paid by November 16th or the entire balance of $5.3 million will become a judgment against the Affiliated Entities. . If this judgment is filed of record, it is likely to prevent the Receiver from obtaining additional financing and could have the effect of collapsing the Receivership and forcing a liquidation or bankruptcy of all the Affiliated Entities. . If this judgment is filed of record, it is likely to prevent the Receiver from obtaining additional financing and could have the effect of collapsing the Receivership and forcing a liquidation or bankruptcy of all the Affiliated Entities. The Receiver is diligently working to obtain a bridge loan to pay off this balance.

    **C.  Landlord Disputes**

32.     Following his appointment, the Receiver discovered that Respondent had failed to pay rent for up to 6 months at numerous locations where the Affiliated Entities conducted business.

33.     Respondent admitted under oath at his deposition that the failure to pay rent was intentional.

34.     The Respondent's failure to cause the Affiliated Entities to pay rent has resulted in the following default circumstances:

    a.  <u>Four Plus Corporation (Landlord), 3330 Preston Ridge Rd., Alpharetta, GA</u>:  On September 29, 2023, Landlord filed a Proceeding against Tenant Holding Over/Dispossessory in the State Court of Cobb County, Georgia, alleging an arrearage of $7,844.49.  On behalf of defendant HHSA, the Receiver filed an answer On October 9, 2023. Counsel for Receiver and Landlord have conferred and are negotiating potential terms to resolve the dispute by agreement.

b.  CPI/AHP Brookhaven MOB Owner, LLC (Landlord), 3929 Peachtree Rd., Suite 100, Atlanta, GA. On August 11, 2023, Landlord filed an *Affidavit/Dispossessory Warrant* in the Magistrate Court of DeKalb County, Georgia, alleging an arrearage of $306,946.52. The Receiver, on behalf of defendant MHSA, filed an Answer on September 1, 2023. Counsel for Receiver and Landlord conferred and negotiated a resolution of the dispute, whereby the Receiver would pay the Landlord $90,000 per month during October, November, and December 2023, $60,000.00 from the Receiver's receipt of Medicare reimbursements (after satisfaction of certain obligations to the Government), and the parties will negotiate a further payment plan to be effective beginning 2024.

c.  Parkway Professional MOB I (Landlord), 1485 Jesse Jewell Parkway, Suite 220, Gainesville, GA:  On August 29, 2023, Landlord served a written notice of default on MHSA, alleging an arrearage of $34,541.06. The Receiver and Landlord's counsel are negotiating in efforts to resolve the dispute by agreement.

d.  LaGrange Med Ventures, LLC (Landlord), 1015 LaFayette Parkway, Suite 130, LaGrange, GA. On August 22, 2023, Landlord served a written notice of default on MHSA, alleging and arrearage of $52,092.07. The Receiver and Landlord's counsel have conferred, and are trying to resolve the dispute by agreement.

e.  GAHC4 Lawrenceville GA MOB II, LLC (Landlord), 600 Professional Dr., Lawrenceville, GA. The Receiver has received notice that Landlord filed an action for damages and/or possession of leased premises on or about October 11, 2023, alleging an arrearage of $807,000.00. The Receiver intends to contact Landlord's counsel to try to resolve the dispute by agreement.

13

f.  <u>GAHC3 Stockbridge GA MOB II, LLC (Landlord), 1365 Rock Quarry Road, Stockbridge, GA</u>.  The Receiver has received notice that Landlord filed an action for damages and/or possession of leased premises on or about October 11, 2023, alleging an arrearage of $376,000.00. The Receiver intends to contact Landlord's counsel to try to resolve the dispute by agreement.

### D. Freezing and Seizure of Bank Funds

35.   The Receiver has identified banks and other financial institutions likely to have deposits of Receivership Assets.  The Receiver sent formal notice to these banks, advising them of the Receivership Order and the appointment of the Receiver, instructing the freezing of all such deposits, and requesting payment to the Receivership of all such deposits. Of the banks contacted, Truist Bank has remitted $53,334.36 and First Horizon has remitted $61.85.

### E. Respondent's Tax and Related Issues

As Receiver for Respondent, the Receiver is investigating Respondent's personal tax issues, and has conferred with Respondent's tax counsel and accountants.  The information compiled to date is summarized here.

**<u>Tax years 2020 to 2022</u>**

- Respondent owes the IRS approximately $2.0 million in tax obligations.

- The IRS holds a lien on Respondent's Florida residence securing obligations of $1.6. The lien amount will be adjusted for total taxes at sale closing.

- Respondent's tax counsel negotiated the forgiveness of $72K in penalties and interest in settlement.

- Respondent's tax counsel presently holds a retainer of $6K.  The Receiver does not intend to demand payment of that retainer to the Receivership Estate so that counsel can continue to work with taxing authorities.

- Respondent owes the State of Georgia $385K for 2020, 2021, and 2022.

- Respondent's tax counsel negotiated the forgiveness of $64K in Georgia penalties and negotiated a $8,300 monthly payment plan which commenced April 2023. Respondent defaulted on that payment plan after making his last payment in July 2023.

**2023 Taxes**

- Respondent has yet to determine and pay estimated tax payment for 2023, and Respondent's accountants are awaiting tax information from MHSA. If Respondent fails to make estimated tax payments for 2023, previous waivers of penalties and interest may be reimposed (Federal and State). The Receiver is compling this information for the accoutants

F. Other Recovery Issues

**Individual Retirement Account**

Respondent liquidated IRA funds and 35% of the funds were withheld for taxes. The Receiver recovered $$224,124.32from liquidation proceeds.

**Sale of Florida Residence**

The proceeds from the sale of Respondent's Florida residence are anticipated to satisfy secured debt of $2.7 million, 2020/2021 taxes of $2.4 million, estimated capital gains taxes, sale commission, and potentially some portion of 2023 taxes. At this time, the Receiver does not anticipate surplus sale proceeds to pay Respodent's other obligation including alimony or excess funds to cover obligations of the Affiliated Entities.

**Boat**

Respondent purchased a 2022 36' AVIARA boat for $558K in 2022 with monthly payments of $3,926.06. Respondent did not have funds to make the payment and the boat was recently surrendered to secured creditor, First Horizon.

G. Receiver and Special Master Fees

As of the end of September, the Receiver, Special Master, and their professionals were owed unpaid fees totaling, as follows:

a. Receiver   $107,604.90

    b. Counsel for Receiver $99,857.82
    c. Special Master $107,772.18 (includes unpaid fees back to May 2023)
    d. Counsel for Special Master $103,863.85 (includes unpaid fees back to May 223)

Pursuant to Court Order dated October 12, 2023, a portion of the proceeds of Respondent's liquidation of his IRA and the proceeds of Respondent's frozen bank accounts were to make partial payments to the Special Master and the Receiver, and $130,000 was to be used to pay the Respondent's alimony obligations. After the application of these payments, the Receiver, Special Master, and their attorneys are owed an estimated $270,000 as of October 31, 2023.

The Receiver and Special Master will provide a report of accrued fees and payments.

**H. Attorneys' Fees for Counsel for Respondent and Affiliated Entities**

As of the Appointment Date, outstanding fees for attorneys for Respondent and the Affiliated Entities are estimated, as follows:

| | |
|---|---|
| Stephano Slack, LLC (Gallups Tax Accountant) | $15,350 |
| Martenson Hasbrouck & Simon, LLP | $76,373 |
| Chilivis Grubman | $12,515 |
| McDermott Will & Emery LLP | $179,999 |
| Capitol Strategies | $73,333 |
| CFGI | $137,500 |
| **TOTAL** | **$501,820** |

**I. Receiver's Next Steps**

The Receiver is continuing to work to resolve the matters addressed above. Additionally, the Receiver's next steps include:

- Discovery, including depositions of the Affiliated Entities former officers, to determine possible claims on behalf of the Receivership Estate;

- Finalizing a new contract with BCBSGA and recovery of receivables

- Closing underperforming offices;

- Obtaining bridge financing to satisfy the obligations to DOJ and trade creditors; and

- Continuing to market and sell the business of the Affiliated Entities.

Respectfully submitted, November 1, 2023.

                                          TAYLOR ENGLISH DUMA LLP

                                          By:   */s/ John K. Rezac*
                                          JOHN K. REZAC
                                          Georgia Bar No. 601935
                                          jrezac@taylorenglish.com

                                              1600 Parkwood Circle, Ste. 200
                                              Atlanta, Georgia 30339
                                              678/336-7195
                                              770/434-7376 (fax)

                                        *Attorneys for S. Gregory Hays, Receiver*

## **CERTIFICATE OF SERVICE**

This is to certify that I have on this day served a copy of the *RECEIVER'S FIRST INTERIM REPORT* upon the following persons by e-mail, as follows:

>Elizabeth Green Lindsey, Esq.
>Davis, Matthews & Quigley, P.C.
>elindsey@dmqlaw.com
>
>F. Skip Sugarman, Esq.
>Sugarman Law LLP
>skip@sugarman-law.com
>
>Lauren A. Warner
>Scott R. Grubman
>CHILIVIS GRUBMAN, LLP
>lwarner@cglawfirm.com
>sgrubman@cglawfirm.com

November 1, 2023.

By: */s/ John K. Rezac*
JOHN K. REZAC